FkeemAN, J.,
delivered the opinion of the Court.
The prisoner was indicted in the Circuit Court of Giles county, for an attempt to commit the crime of murder in the first degree, on Richard Allen, by administering “a certain deadly poison called strychnine.”
He was convicted and sentenced to the penitentiary for three years; and brings his ease to this court by appeal, in the nature of a writ of error.
The first objection relied on is, that the indictment is not shown to have been returned into open Court.
The answer to this is, that it does appear that “the grand jurors aforesaid returned into court an indictment against Philip Maples for an attempt to commit murder in the first degree, in words and figures as follows,” &c. We can not well understand how this could have been done, unless the court had been in session. They might have returned it to the Clerk’s office, or into the court room, without this; but not into court, unless the court had been open.
The next objection is, that there is no proof showing that the offense was committed in Giles county.
There is nothing in this objection, as we think the proof does show the offense was committed in that *410 county. Dr. Beatty proves, that he resides in Elkton, Giles county; had a negro, he says, “in my employment, in May, 1870, named Richard Allen, who stayed in a cabin in the yard; was called up to see the negro, and found him in the cabin,” &c. The fair construction of this language is, that this occurred at his residence in the county as stated, especially as no effort is made to prove the contrary.
It is then insisted in argument, that there is no proof that strychnine is poison. The witness, Dr. Beatty, however, states distinctly, after giving the symptoms which he observed, that he was satisfied he had been poisoned by strychnine. How a man can be poisoned by strychnine, and yet strychnine not be a poison, we have been unable to see.
The point, however, most seriously pressed on us for reversal, is, that certain confessions made to Dr. Beatty by the prisoner, were improperly admitted.
The facts, as detailed by the witness, are, that “the next morning after the poisoning occurred, Dr. Beatty went to the magistrate’s office, where,” he says, “he found the prisoner under arrest, as well as Dick Brown, another negro implicated in the poisoning. They were about to go into the trial or investigation of the matter, when Maples came up to me and said he wanted to make a statement or confession to me about it; that he wanted to tell me all about it. I told him he was not bound - to do so, and could not be compelled to do it; and if he did tell it, he must do so voluntarily; and I stated to him that any admissions he might make would be testimony against him on final *411 trial, but be said be wanted to tell it.” At this point counsel for tbe prisoner objected to tbe witness making any statement as to a confession made by tbe prisoner, and offered to introduce witnesses (one of them being one of tbe State witnesses, then under tbe rule) to show that tbe alleged confession was made under such circumstances that it ought not to go before tbe jury, and could not be used as evidence. The court overruled tbe objection, refusing to suspend tbe examination of tbe witness, and permit tbe introduction of such testimony, but allowed the confession to go to tbe jury, ruling that if afterwards tbe prisoner could show that tbe confession was made under such circumstances as rendered it incompetent, tbe court could withdraw it from the jury.
A remark of tbe court in the case of State v. Fields, Peck R., p. 143, is relied on to sustain this objection. It is as follows: “It is tbe opinion of tbe court, that testimony should, in sound discretion, be inquired into, with a view to its competency, and rejected, rather before it is stated to the jury by the witness, than after-wards, for fear of impressions that can not be effaced, after tbe evidence should be decided to be incompetent and improper for tbe jury to bear.” This rule we think a sound one, and feel no disposition to change it; but still, under the rule, it is a matter of sound discretion in the presiding Judge, and one which, in tbe practical administration of justice, can be safely confided to him; and we could not reverse a case where such discretion has been exercised, unless we could see that it has been abused, and exercised to the injury of a *412 prisoner, under circumstances unwarrantable and improper. We do not think this is such a case.
S. Denivant was introduced in the progress of the trial, for the prisoner, who stated that he helped to arrest the prisoner on the night of the alleged poisoning; helped to guard him that night; that Mr. Baugh commenced talking to him, and said, “we know that you are not at the head of this, and if you will tell all about it, it will be best for you, and it may release you.”
Thereupon the prisoner made a confession of it to Mr. Baugh; says he was not present the next morning when Dr. Beatty talked with the prisoner.
The counsel of the prisoner then moved the court to withdraw from the jury any evidence of the confession made to Dr. Beatty, previously referred to in this opinion. The court refused to do so.
The rule of law on the subject of admission of confessions is, perhaps, as well stated by this court, in case of Deathridge v. The State, as it can be found anywhere. It is: “If a confession be free and voluntary, if it appear to proceed merely, from a sense of guilt, and not from the influence of hope or fear in any degree, it is competent evidence. Great weight is due to a confession of this kind; for we are to presume, in the absence of influence or motive, a person who is innocent of crime will not confess himself guilty. But if the confession be the result of hope or fear, induced or excited by a person having power over the prisoner, it becomes incompetent; for in such case it can have no tendency to prove the prisoner is guilty of the crime.”
*413 The ease of McGlothlin and Buntin v. The State is cited to sustain the objection here relied on. That was a very different case from this, for the confession was made to the magistrate with the threats and promises being uttered almost at the time the confession was made; in fact the court say “they were continued from the time of the arrest, during the trial, during the time they were making the confessions, and up to the time of their conviction.” Under these circumstances, the confessions were clearly extorted, and not voluntary, and were properly excluded.
But, in this case, the confession was made to Dr.-Beatty, about 9 o’clock next morning after he had confessed to Baugh. Dr. Beatty did not have charge of him; had just come to the place of trial; probably knew nothing of the promises made, or of the confessions.
The prisoner went to him voluntarily, and told him he wanted to make a statement to him about it. He told the prisoner he was not bound to do so, could not be compelled to do it, and if he did he must do it voluntarily, and that what he said would be used as testimony against him on final trial; but prisoner said he wanted to tell it, and did so.
"We think in such a confession we have all the guaranty for its truthfulness that can be had in such a case. We see it was voluntary, after being warned of the consequences and informed of his rights, and that he could not be compelled to do so. Yet, with all this, he insisted on making the confession. We can see no rule of law on which such a confession can be excluded. The witness seemed to have acted *414 in the humane spirit of the law, requiring confessions to be voluntary, and even giving the party full knowledge of his rights, and warning him of the danger that such confession would -be used against him on final trial, so that he had no inducement c-r advantage held up to him; on the contrary, the opposite effect clearly presented. Such a confession is clearly competent
We may add, that the prisoner’s guilt is proven beyond all doubt or question, and we affirm the judgment of the court.